IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THEODORE BRYANT, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-25-0057 |
| MARKWAYNE MULLIN,[1] | * | |
| Defendant. | * | |

***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Secretary of the United States Department of Homeland Security ("DHS") Markwayne Mullin's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 33). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will grant the Motion.

## I.   BACKGROUND

### A.   Factual Background

Self-represented Plaintiff Theodore Bryant is a Supervisory Transportation Security Officer ("STSO") at the Baltimore/Washington International Thurgood Marshall Airport ("BWI") in Baltimore, Maryland. (EEOC Rep. Investigation at 1, ECF No. 33-2).[2] On April 14, 2022, Lead Transportation Security Officer ("LTSO") Kristofferson Service conducted

---

[1] The Clerk will be directed to replace former Secretary Kristi Noem with current Secretary Markwayne Mullin as Defendant in this action. See Fed.R.Civ.P. 25(d).

[2] Unless otherwise noted, citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Files ("CM/ECF") system.

a training exercise at one of the security checkpoints at BWI. (Id. at 3, 63). Posing as a passenger, he walked through the metal detector and was randomly selected for screening through the Advanced Imaging Technology ("AIT"). (Id. at 61, 63). The AIT detected an anomaly in his groin area, so the Transportation Security Officer ("TSO"), Ronald Wilkins, called for a STSO before conducting a "sensitive area pat down." (Id. at 61). Bryant responded. (Id.).

Upon Bryant's arrival, Wilkins conducted a groin-anomaly pat down of Service. (Id.). It is unclear whether Wilkins told Bryant that he found an anomaly or did not find any anomalies as a result of this pat down. (Id. at 75). Either way, Bryant then directed Service and Wilkins to the private screening room, wherein Bryant instructed Service to remove his pants. (Id. at 61, 63). Bryant did not offer Service a privacy drape or any other type of covering. (Id. at 61). Service was "caught off guard and uncomfortable with this request," but he complied, nonetheless. (Id.). Bryant allegedly patted Service down while he was in his underwear. (Id. at 64, 68). He then allegedly directed Service to remove his underwear, saying something to the effect of, "Come on, we're all guys here." (Id. at 61). Service refused. (Id.). Having found nothing during the sensitive area pat down, Bryant allowed Service to leave the private screening area. (Id.). Service then continued with his training exercise. (Id.).

Service shared his experience with two co-workers a few days later and, upon their urging, filed an incident report on April 27, 2022. (Id. at 64, 73). Service's report triggered a fact-finding investigation under the Transportation Security Administration's ("TSA") anti-harassment program. (Id. at 70). The appointed fact finder, Senior Transportation

2

Security Manager Ivy Brewington, reviewed surveillance footage and interviewed Service, Bryant, Wilkins, and the two co-workers that Service spoke to about the incident. (Id. at 3, 70, 72–75). On May 8, 2022, Brewington issued a report, in which she concluded that certain "procedural errors and [Standard Operating Procedure ("SOP")] violations" occurred, namely, that Bryant required Service to remove clothing and did not provide a privacy drape and that Bryant did not call for additional screening to resolve the AIT groin-anomaly alarm. (Id. at 76–77).

On July 21, 2022, Transportation Security Manager Calvin Champion issued a Letter of Reprimand ("LOR") against Bryant for his failure to adhere to SOPs when screening Service. (Id. at 96–98). The next day, Bryant contacted an Equal Employment Opportunity ("EEO") counselor, and on August 20, 2022, he filed an official EEO complaint, alleging that the LOR was a form of retaliation against him for filing other EEO complaints in the past. (Id. at 20–22, 29). In a decision dated January 9, 2023, DHS's Office for Civil Rights and Civil Liberties ("OCRCL") concluded that Bryant "failed to prove that [TSA] discriminated against [him]." (Final Agency Decision at 8, ECF No. 33-3). Bryant appealed this decision to the Equal Employment Opportunity Commission ("EEOC"). (EEOC Final Decision at 1, ECF No. 33-4). The EEOC affirmed the OCRCL's decision, finding that Bryant "failed to show that [TSA's] articulated reasons for its actions were mere pretext for retaliation." (Id. at 5). Bryant submitted a request for reconsideration of the EEOC's decision, (Req. Recons. at 1, ECF No. 33-5), which the EEOC denied on October 21, 2024, (EEOC Decision Req. Recons. at 1, 7, ECF No. 33-6).

**B.    Procedural History**

Bryant filed a Complaint in this Court on January 8, 2025, alleging retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, et seq. (Compl. at 3, 5). After extensive briefing regarding service, (see ECF Nos. 10, 11, 14–20), and a brief stay due to a lapse in federal funding, (see ECF Nos. 21–31), Secretary Mullin filed the instant Motion to Dismiss or, in the alternative, Motion for Summary Judgment on January 30, 2026, (ECF No. 33). Bryant filed an Opposition on March 2, 2026, (ECF No. 35), and Secretary Mullin filed a Reply on March 31, 2026, (ECF No. 36).

## II.    DISCUSSION

**A.    Standard of Review**

**1.    Conversion**

Secretary Mullin's Motion is styled as a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, a Motion for Summary Judgment under Federal Rule of Civil Procedure 56. (Mem. L. Supp. Def.'s Mot. Dismiss Alt. Summ. J. ["Mot. Summ. J."] at 1, ECF No. 33-1). A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6)

4

motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified

reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

"The Fourth Circuit places 'great weight' on the affidavit requirement," Nautilus Ins. Co. v. REMAC Am., Inc., 956 F.Supp.2d 674, 683 (D.Md. 2013) (quoting Evans, 80 F.3d at 961); however, non-compliance may be excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary," Harrods, 302 F.3d at 244. Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive." Id. (quoting 10B Wright, Miller & Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)).

Nonetheless, a Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Est of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995)).

In this case, Secretary Mullin titled his Motion "in the alternative" and submitted multiple exhibits for the Court's consideration. (Mot. Summ. J. at 1; ECF Nos. 33-2–33-6). The Court also notified Bryant of his right to respond to Secretary Mullin's Motion; advised that he may file affidavits, declarations, and exhibits with his response; and explained that if he needed discovery to obtain necessary information, he must file a request

for additional time to conduct that discovery. (See Rule 12/56 Notice at 1, ECF No. 34). Bryant, therefore, was on notice that conversion under Rule 12(d) may occur. See Moret, 381 F.Supp.2d at 464.

Bryant did not file a request or indicate a need for additional discovery. Indeed, he submitted multiple exhibits with his Opposition and asks the Court to "look at the evidence for a Summary Judgment and find in his favor." (Resp. Agency Mot. Dismiss Alt. Summ. J. ["Opp'n"] at 1, ECF No. 35). Moreover, Secretary Mullin provided the administrative record for this case. (See ECF Nos. 33-2–33-6). "The Fourth Circuit has held that in the federal employment context, where the administrative record is before the district court and the plaintiff has not identified specific discovery that is lacking, it is appropriate to decide a motion for summary judgment on that record." Abdelhamid v. Sec'y of Navy, 525 F.Supp.3d 671, 682 (E.D.Va. 2021). Accordingly, the Court will construe Secretary Mullin's Motion as one for summary judgment and will consider materials submitted by the Parties.

### B.   Summary Judgment

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory

answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites "in a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing that there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co., LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citations omitted). Whether a fact is "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on

an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**C.    Analysis**

Bryant alleges one cause of action against Secretary Mullin: retaliation under Title VII. (Compl. at 3, 5). Title VII prohibits an employer from retaliating against an employee for complaining about prior discrimination or retaliation. 42 U.S.C. § 2000e-3(a). A plaintiff may establish a Title VII claim "either 'through direct and indirect evidence of retaliatory animus,' or through a burden-shifting 'pretext' framework." Netter v. Barnes, 908 F.3d 932, 938 (4th Cir. 2018) (quoting Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015)).

Bryant's Complaint does not include allegations of direct evidence of retaliation. Walton v. Harker, 33 F.4th 165, 176 (4th Cir. 2022) ("Direct evidence 'is evidence which, if believed, would prove the existence of a fact without any inference or presumptions.'" (quoting O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 548 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996))). The Court, therefore, will evaluate Bryant's claim under the burden-shifting framework first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

To prevail under the McDonnell Douglas framework, Bryant must put forth a prima facie case of retaliation by establishing that: (1) he engaged in a protected activity; (2) TSA took adverse action against him; and (3) a causal relationship exists between the protected

activity and the adverse action. Foster, 787 F.3d at 250 (citation omitted). If Bryant succeeds in establishing a prima facie case, the burden shifts to Secretary Mullin "to show that [TSA's] purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." Id. If Secretary Mullin does so, "the burden shifts back to [Bryant] to rebut [Secretary Mullin's] evidence by demonstrating that [TSA's] purported nonretaliatory reasons 'were not its true reasons, but were a pretext for discrimination.'" Id. (quoting Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc)).

Here, Bryant has established that he engaged in a protected activity, namely, filing EEO complaints. (Compl. at 5; Opp'n at 3–5); Glenn v. Union, ILA Loc. Union 333, No. ADC-23-3204, 2024 WL 776756, at *7 (D.Md. Feb. 26, 2024) ("Filing an EEOC charge is a protected activity under Title VII."). He also has established an adverse action: the LOR. While letters of reprimand generally do not constitute adverse actions under Title VII, unless they have a "real, rather than speculative, employment injury," Faulkenberry v. U.S. Dep't of Def., 670 F.Supp.3d 234, 259 n.5 (D.Md. 2023) (quoting Smith v. Vilsack, 832 F.Supp.2d 573, 583 (D.Md. 2011)), they can amount to an adverse action when they include a warning that "future disciplinary actions could result in further discipline, including termination," Prosa v. Austin, No. ELH-20-3015, 2022 WL 394465, at *32 (D.Md. Feb. 8, 2022) (quoting Barnes v. Charles Cnty. Pub. Schs., 747 F.App'x 115, 119 (4th Cir. 2018) (per curiam)). Bryant's LOR did not alter the terms, conditions, or benefits of his employment, but it did include a warning that "[f]uture misconduct may lead to further and more severe disciplinary action, up to and including removal from Federal

10

service." (EEOC Rep. Investigation at 98). The Court, therefore, will consider the LOR an adverse action.

Although he has satisfied the first two elements, Bryant fails to satisfy the third element: causation. A plaintiff may demonstrate causation by "the existence of facts that suggest that the adverse action occurred because of the protected activity." Barbour v. Garland, 105 F.4th 579, 593 (4th Cir. 2024) (quoting Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 123 (4th Cir. 2021)). A plaintiff also may establish a causal link between the protected activity and the adverse action by demonstrating that the latter "bears sufficient temporal proximity to" the former. Gaines v. Balt. Police Dep't, 657 F.Supp.3d 708, 745 (D.Md. 2023) (quoting Laurent-Workman v. Wormuth, 54 F.4th 201, 218 (4th Cir. 2022)). To do so, the plaintiff "must prove that the protected activity preceded the adverse action . . . , that the employer knew the employee engaged in a protected activity," Foster v. Summer Vill. Cmty. Ass'n, Inc., 520 F.Supp.3d 734, 746 (D.Md. 2021) (quoting Gibson v. Marjack Co., 718 F.Supp.2d 649, 655 (D.Md. 2010)), and that the time between when the employer learned of the protected activity and when the employer issued the adverse action was "very close," Gaines, 657 F.Supp.3d at 745 (quoting Clark Cnty. Sch. Dist. v. Breedan, 532 U.S. 268, 273 (2001)). While there is no bright-line rule, the Fourth Circuit has found that "a time period of three to four months is too great to establish a causal link through temporal proximity alone," but "[a] ten-week time period can be sufficient to establish a prima facie case of retaliation." Emami v. Bolden, 241 F.Supp.3d 673, 681 (E.D.Va. 2017) (first citing Pascual v. Lowe's Home Ctrs., Inc., 193 F.App'x. 229, 233

11

(4th Cir. 2006); and then citing Silva v. Bowie State Univ., 172 F.App'x. 476, 478 (4th Cir. 2006)).

Here, Bryant relies on temporal proximity alone to demonstrate a causal link. (See Opp'n at 4). But he has not shown if or when Champion (the issuer of the LOR) learned of Bryant's prior EEO complaints let alone that the gap between Champion learning of those complaints and issuing the LOR was sufficiently close to establish a causal link through temporal proximity. See Foster, 520 F.Supp.3d at 746–47 (finding that plaintiff failed to establish prima facie case of retaliation because no evidence that supervisor knew of plaintiff's prior EEOC complaints before firing plaintiff); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (finding that plaintiff "failed to satisfy the causation element of [his retaliation] claim because he introduced no evidence that [employer] knew about his EEO charge," and noting that "[k]nowledge of a charge is essential to a retaliation claim").

Even if Bryant had satisfied this final element, however, Secretary Mullin has met his burden of showing that the "purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." Foster, 787 F.3d at 250. Specifically, Brewington found through her investigation that Bryant violated TSA's SOPs when he did not provide a privacy drape to Service during the sensitive area pat down, (EEOC Rep. Investigation at 77), and Champion cites this violation as the reason for the LOR, (id. at 96–97); see Mercer v. PHH Corp., 641 F.App'x 233, 240 (4th Cir. 2016) (finding that "breach of the [employer's] ethics policy" was a legitimate reason for plaintiff's termination); Tomasello v. Fairfax Cnty., No. 1:15-CV-95, 2016 WL 165708, at *10 (E.D.Va. Jan. 13, 2016)

(finding that plaintiff's violation of a series of employer's rules was a legitimate reason for plaintiff's transfer).

Bryant, in turn, cannot meet his burden of demonstrating that Champion's legitimate reason for the LOR (the SOP violation) was pretextual. See Foster, 787 F.3d at 250. He argues at length that certain individuals lied during the investigation into Bryant's conduct (Opp'n at 1–4). The alleged "lies" that Bryant refers to, however, are immaterial, as none of them pertain to whether Bryant violated TSA's SOP on offering a privacy drape during sensitive area pat downs.[3] Moreover, such bald assertions that certain individuals lied, without supporting evidence, is insufficient to establish pretext. See Diggs v. Kelly, No. PJM 15-2378, 2017 WL 1104671, at *9 (D.Md. Mar. 23, 2017) (finding that plaintiff failed to demonstrate pretext because "[i]t is not enough for [plaintiff] to simply maintain that [defendant's] assertions are not true and were fabricated in retaliation for her EEOC complaints"; "bare denials do not suffice to create triable questions and defeat summary judgment"; and plaintiff "provided no evidence that she was not disruptive," the legitimate reason for her termination, "other than her own account, which is insufficient as a matter of law"), aff'd sub nom. Diggs v. Duke, 696 F.App'x 644 (4th Cir. 2017).

---

[3] (See Opp'n at 1–4 (arguing that various individuals lied about whether Service chose the private screening room for the pat down; whether Wilkins told Bryant he could not clear the groin anomaly alarm; the proper protocol if unable to clear an AIT anomaly alarm; whether Wilkins conducted a pat down in the private screening room; what occurred after Bryant, Wilkins, and Service exited the private screening room); see also EEOC Rep. Investigation at 96 (TSA's SOPs require employees to "offer a drape to cover any sensitive areas during a pat down . . . .")).

Bryant also states in his Opposition that he "patted [Service] down in his clothes, not in his underwear . . . ." (Opp'n at 1). Whether that is true is irrelevant when, according to his, Service's, and Wilkins' statements during the EEOC investigation, Bryant told Service to remove his pants, Service did so at least partially, and Bryant never offered Service a privacy drape. (See EEOC Rep. Investigation at 39, 50, 63–64, 66, 68, 74–75). These acts formed the basis of the SOP violation. (Id. at 96 (Champion explaining that Bryant's "decision to have LTSO Service to pull his pants down, in addition to the decision to doing [sic] so without offering him a drape, constitutes a failure to follow SOP")).

Finally, Bryant argues that Mission Support "cleared [him] of the whole issue," suggesting that Brewington's findings could not serve as a basis for issuing the LOR. (Opp'n at 3). But Mission Support's Letter of Closure states only that "allegations that [Bryant] behaved in a harassing manner towards [Service] . . . were unsubstantiated." (EEOC Rep. Investigation at 45). Mission Support made no findings as to Brewington's conclusion that Bryant violated TSA's SOPs. (Id. at 21 (Brewington stating that "no harassment was found but it did not negate that [Bryant] may have violated SOPs and policy which is why he received the LOR")). Champion does not cite any alleged harassment as the basis for the LOR; he cites only the SOP violation, of which Bryant was not "cleared" by Mission Control. (See id. at 96–97). Thus, Bryant has not provided any "direct or circumstantial evidence that calls into question [Champion's] explanation" that the SOP violation was the reason for the LOR. Mercer, 641 F.App'x at 240. Accordingly, Bryant has not established that Champion's legitimate basis for the LOR was pretextual.

14

At bottom, Bryant fails to establish a prima facie case of retaliation and, even if he had, he fails to show that Champion's reason for issuing the LOR was pretextual.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant Secretary Mullin's Motion for Summary Judgment (ECF No. 33). A separate Order follows.

Entered this 20th day of May, 2026.

_____/s/_____

George L. Russell, III
Chief United States District Judge
